**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| _____ | : CIVIL ACTION No.: 3:18-cv-04099 |
| NAJIB NABI, | : |
| | : |
| Plaintiff, | : |
| | : **SECOND AMENDED COMPLAINT** |
| v. | : |
| | : |
| JOSEPH STIMMEL, EDWARD ELLSWORTH, JAMES | : |
| MCCAFFREY, PIERRELIE'S FOUNTAIN, INC. | : |
| D/B/A THE GOLDEN RAIL, THOMAS MANNION, | : |
| KEITH ABRAMS, THE MIDDLESEX | : |
| COUNTY PROSECUTOR'S OFFICE, BRANDT GREGUS, | : |
| CITY OF NEW BRUNSWICK, JOHN & | : |
| JANE DOES 1-50, AND XYZ CORPORATIONS 1-50, | : |
| | : |
| Defendants. | : |
| _____ | : |

## <u>INTRODUCTION</u>

In May 2014 Plaintiff, Lieutenant Najib Nabi, was charged by Defendant Officer Gregus with, among other things, aggravated assault of Defendant Joseph Stimmel. The allegation was that on May 5, 2014 Lieutenant Nabi assaulted Defendant Stimmel while Lieutenant Nabi was a patron at the Golden Rail Pub and while Stimmel was employed as a bouncer. A warrant complaint issued May 10, 2014. Lieutenant Nabi was arrested May 30, 2014. In February 2015 Lieutenant Nabi was indicted for the alleged May 5-6, 2014 assault. On June 28, 2017 following a jury trial, Lieutenant Nabi was found not guilty of all charges. The incident which resulted in the charges was captured on video. The video proves, unequivocally, Defendant Stimmel has done nothing but lie about what happened May 5, 2014. Defendant Gregus, Defendant Mannion, and Defendant Abrams co-signed that lie at every opportunity. The only victim of an assault on May 5, 2014 was Lieutenant Nabi. He was assaulted by Defendant Stimmel. The false charges and arrest, promoted by Defendant Stimmel and supported by law enforcement, have caused Lieutenant Nabi serious and permanent damages including, but not limited to, loss of income and permanent psychological injury.

1

## <u>PARTIES</u>

1.      Plaintiff, Lieutenant Nabi, is a citizen of New Jersey, residing in Middlesex County both at the time of this filing and at all times relevant to this complaint.  At all times relevant to this complaint, Lieutenant Nabi was and is a First Lieutenant with the New Jersey Army National Guard.

2.      Defendant, Joseph Stimmel, upon information and belief is a resident of the State of New Jersey, residing at 9 Ruskin Court, in the Township of Wayne, County of Passaic.  At all times relevant to this action, Defendant Stimmel was an employee of Defendant, Pierrelie's Fountain, Inc., d/b/a The Golden Rail (hereinafter, "Defendant TGR") and/or XYZ Corporation (1-50) , employed as security personnel, and was supervised directly Defendant Edward Ellsworth, Defendant James McCaffrey, and/or John & Jane Does (1-50).

3.      Defendant, Edward Ellsworth, upon information and belief is a resident of the State of New Jersey.  At all times relevant to this action, Defendant Ellsworth was an employee, specifically a manager, at Defendant TGR and/or XYZ Corporation (1-50) and was responsible for the hiring, training and/or supervision of Defendant Joseph Stimmel.

4.      Defendant James McCaffery, upon information and belief is a resident of the State of New Jersey.  At all time relevant to this action, Defendant McCaffery was an employee, specifically the "head bouncer" at Defendant TGR and/or XYZ Corporation (1-5) and was responsible for the hiring training and/or supervision of Defendant Joseph Stimmel.

5.      Defendant Pierrelie's Fountain Inc. d/b/a The Golden Rail, upon information and belief, owns and operates an establishment located at 66 Easton Avenue in New Brunswick, Middlesex County, New Jersey known commonly as The Golden Rail.  Defendant TGR holds a liquor license, and alcohol is served on premises during normal business hours.  In connection with its business, Defendant TGR owns and operates a website with a URL address of http://goldenrailpub.com.

6.      Defendant Thomas Mannion was, at all times relevant to this action, an Assistant Prosecutor with the MCPO responsible for the prosecution of Plaintiff, Lieutenant Nabi.

7.      Defendant Keith Abrams was, at all times relevant to this action, an Assistant Prosecutor with the MCPO responsible for the prosecution of Plaintiff, Lieutenant Nabi.

8.      Defendant Brandt Gregus, was, at all times relevant to this action, a detective in the Police Department of the City of New Brunswick and responsible for the upholding and enforcing the law and maintain the peace of the City of New Brunswick, and was at all times relevant herein involved in the investigation, arrest and prosecution of the Plaintiff.

9.      Defendant Middlesex County Prosecutor's Office is a public entity in the State of New Jersey responsible for the investigation and prosecution of crimes within its jurisdiction.

10.     Defendant City of New Brunswick was a municipal corporation organized and existed under and by virtue of the laws of the State of New Jersey which also encompassed the police department of the City of New Brunswick, hereinafter identified as New Brunswick Police Department or NBPD, which at all times employed the defendant police officer.

11.     Defendants, JOHN & JANE DOES (1-50) are individuals and/or entities not yet known or identified, but, upon reasonable discovery, once identified, Plaintiffs will amend this Complaint to show their true names and capacities when the same have been ascertained. Plaintiffs, upon information and belief, thereon allege that each fictitiously plead individual defendant, JOHN & JANE DOES (1-50) are those who are charged with direct supervisory and training authority and function over Defendant Stimmel or are individuals employed by either the MCPO or the NBPD involved in the investigation, arrest and prosecution of Plaintiff, Lieutenant Nabi

12.     Defendants, XYZ Corporations (1-50) are, at this juncture, unknown and unidentified entities which are either involved in the ownership of Defendant, Golden Rail, responsible for the employment of Defendant Stimmel, or public entities somehow involved in the investigation, arrest and prosecution of Plaintiff, Lieutenant Nabi

## **JURISDICTION**

13.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331.

14.     This matter was original filed with the Superior Court of New Jersey, Law Division, Middlesex County on February 21, 2018.

15.     Pursuant to 28 U.S.C. § 1441 (a) and 28 U.S.C. § 1446 (b)(3), this action was removed to the jurisdiction of the United States District Court upon the Notice of Removal filed by the Defendants Keith Abrams, Thomas Mannion and the Middlesex County Prosecutor's Office on or about March 23, 2018. (Notice of Removal, ECF No. 1)

## VENUE

16.     Venue in the District of New Jersey is proper under Section 1391(b)(1) and (2) of Title 29 of the United States Code because all events and acts of omission or commission occurred, and all the property involved in this action, is situated within the District of New Jersey.

## ALLEGATIONS COMMON TO ALL COUNTS

### THE INCIDENT AT THE GOLDEN RAIL

17.     At all times relevant hereto, Defendant Stimmel was employed at Defendant TGR for approximately eight (8) months.

18.     At all times relevant hereto, in the eight (8) months while employed at Defendant TGR, Defendant Stimmel was involved in many altercations at Defendant TGR.

19.     On May 5, 2014, into the early hours of May 6, 2014, Lieutenant Nabi was a patron at Defendant, TGR.

20.     On the above date, Lieutenant Nabi was a patron at TGR and was there together with his friend, Staff Sergeant Zak Goeb and his sister, Faizah Nabi.

21.     At all times relevant hereto, Defendant, TGR, owed a duty to its patrons to provide a reasonably safe premise to engage in that which is within the scope of the invitation.

22.     At all times relevant hereto, Defendants TGR, Defendant Ellsworth, Defendant McCaffrey, John & Jane Does 1-10, and/or XYZ Corporations 1-50, individually or collectively, owed a duty to its patrons to exercise reasonable care in hiring, retention and training of its employees.  Aforementioned Defendants failed in said duty resulting in the injuries sustained by Lieutenant Nabi.

23.     As described in detail below, the events which are the subject of this action were captured by video surveillance equipment installed at the Golden Rail Pub.

24.     During his time as a patron at Defendant, TGR, Lieutenant Nabi observed an unknown patron begin dancing with his sister, Faizah Nabi.

25.     Initially, this fact presented no issue, as Lieutenant Nabi's sister was consenting to dancing with the unknown male patron.

26.     Faizah Nabi was dancing with the unknown male patron, the male patron placed his hand up the shirt of Lieutenant Nabi's sister.

27.     Faizah Nabi vocalized her objection and made motions demonstrating her objection.

28.     Lieutenant Nabi, without being aggressive or physically confrontational, simply stepped between his sister and the unknown male patron, and calmly guided the unknown male patron over and away from his sister.

29.     Lieutenant Nabi then turned away from his sister and the unknown male patron.

30.     While Lieutenant Nabi's back was turned, a TGR employee, Defendant Stimmel, rushed up behind Lieutenant Nabi, and without warning, and without any justifiable cause, immediately placed Lieutenant Nabi in a submission choke hold.

31.     At all times relevant hereto, the conduct of Defendant Stimmel was undertaken in the course and scope of Defendant Stimmel's employment and/or accomplished his wrongful and negligent acts by virtue of his job-created authority as bar security.

32.     At all times relevant hereto, Defendant Stimmel was acting to serve the interests of his employer when committing the wrongful and negligent acts alleged herein.

33.     Defendant Stimmel did not approach either Lieutenant Nabi, the unknown male patron, or anyone else in the area to first investigate, or to attempt to peacefully separate anyone.

34.     Defendant Stimmel made no attempts to use lawful constructive authority.

35.     Defendant Stimmel simply rushed upon Lieutenant Nabi, while his back was turned, and immediately began choking him to the point where Lieutenant Nabi could not breathe.

36.     At all times relevant hereto, Defendant Stimmel, as a security officer, had the same authority as a private citizen and had no increased right to use force against another.

37.     Defendant Stimmel used unlawful physical force upon Lieutenant Nabi.

38.     Defendant Stimmel, while continuing to choke and submit Lieutenant Nabi, began dragging him across the dance floor.

39.     As he could not breathe, and was unaware of his attacker's identity, Lieutenant Nabi began swinging his free hand at his attacker in an effort to break free.

40.     Defendant Stimmel, while choking Lieutenant Nabi and pulling Lieutenant Nabi away from any available exits, also dragged Lieutenant Nabi to the ground with him.  At this point on the captured surveillance footage, Lieutenant Nabi and Defendant Stimmel fall off screen.

41.     The above described incident is captured from 01:21:07 on the subject video to 01:21:18 - a total of approximately eleven (11) seconds.

42.     The footage captured on Camera 8 shows Defendant Stimmel's encounter with Lieutenant Nabi begins at 01:21:15 with Defendant Stimmel rushing Lieutenant Nabi from behind.

43.     The footage captured on Camera 8 shows Defendant Stimmel dragging Lieutenant Nabi out of frame at 01:21:21.

44.     The entire interaction between Defendant Stimmel and Lieutenant Nabi, prior to Defendant Stimmel dragging Lieutenant Nabi out of frame and to the ground, lasted six (6) seconds.

45.     Other TGR security personnel responded to the back of the bar, approximately 1:21:27 on the Camera 8 video.  One of the bouncers, identified later as James McCaffrey, pulled Lieutenant Nabi away and guided him to the front of the bar, shoved him through the front entrance and instructed him to, "go home."

46.     Upon information and belief, Defendants TGR, John & Jane Does 1-50, and XYZ Corporations 1-50 were aware of previous incidents involving employees and patrons of TGR. Furthermore, upon information and belief, Defendants were aware of complaints made by patrons against the employees of TGR.

THE INVESTIGATIONS

47.     On May 6, 2014, at approximately 1:25 AM the New Brunswick Police Department was alerted to the incident at the Golden Rail Pub.

48.     The responding officers, Officer Hendricks and Officer Puccio, were able to watch the surveillance video upon arriving at TGR.  However, a copy could not be provided as the owner of the establishment was the only individual who had access to make copies.

49.      Following the incident at the Golden Rail Pub, Defendant Stimmel conducted his own investigation into the identity of the person he alleged had assaulted him.

50.      Following the incident at the Golden Rail Pub, Defendant Stimmel provided the results of his independent investigation to the NBPD and identified Lieutenant Nabi as the individual who allegedly assaulted him.

51.     May 10, 2014 was the first time Defendant Gregus became involved in the underlying criminal investigation.

52.     On June 21, 2017, Defendant Gregus testified at the jury trial of Lieutenant Nabi.

53.     Defendant Gregus testified at the criminal trial of Lieutenant Nabi that he did not "get involved" in the case until May 10, 2014.

54.     Defendant Gregus testified that on that date he contacted Defendant Stimmel. Defendant Stimmel informed Defendant Gregus that he had information regarding the "suspect in this case."

55.     At 7:42 PM on May 10, 2014, Defendant Gregus took the statement of Defendant Stimmel at the New Brunswick Police Department.

56.     During his recorded statement to Defendant Gregus, Defendant Stimmel stated the following:

    a.   Defendant Stimmel "distinctively remember[ed]" the events of the evening.

    b.   Defendant Stimmel recalled going "over there and [attempting to] separate" Lieutenant Nabi from the unknown male to "try and calm them down and find out what the problem is."

    c.   Defendant Stimmel claimed he got "in the middle of both of them" and spoke to Lieutenant Nabi, saying "hey guys, calm down, stop, what's going on, something along those lines" and that he tried to "put his arms in between them and say stop guys what's the problem."

    d.   Defendant Stimmel stated that Lieutenant Nabi ignored him and then turned to "face the individual he [Lieutenant Nabi] was attacking" and that he witnessed "[Lieutenant Nabi] try and strike the individual."

    e.   Defendant Stimmel stated that "once [he] saw [Lieutenant Nabi] try and strike the person" that is when he "tried not [to] submit [Lieutenant Nabi], not choke him, or hit him."

    f.   Defendant Stimmel claims that he tried to "grab [Lieutenant Nabi] by the waist . . . and pull him back and say, 'stop man, stop, stop.'"

    g.   Defendant Stimmel claimed he "tried to call over the other bouncers with [his] free arm" which to Defendant Stimmel indicated that he "clearly at this point [he was] not submitting [Lieutenant Nabi].

    h.   Defendant Stimmel claimed that Lieutenant Nabi struck him twice and that while he was "tussling on the ground" with Lieutenant Nabi while he was "bleeding profusely out of [his] head . . . literally streaming out like a sprinkler."

     i.    Defendant Stimmel claims that after taking Lieutenant Nabi to the ground "[Lieutenant Nabi's] friends actually started jumping in and kicking [him] trying to get [him] to let go of their friend."

57.    Defendant Gregus' interview of Defendant Stimmel concluded at approximately 7:55 PM.

58.    Approximately an hour later, at or about 8:49 PM, Defendant Gregus telephonically applied for a Complaint-Warrant against Lieutenant Nabi executed by Judge Philip A. Borow, J.M.C. of the New Brunswick Municipal Court.  The probable cause for the Complaint-Warrant was the "Victim statement" as indicated on Complaint-Warrant 1214-W-2014-000888.

59.    Defendant Gregus did not inform Judge Borow of the existence of the surveillance video footage.

60.    Defendant Gregus did not review the surveillance video footage prior applying for the Complaint-Warrant.

61.    Defendant Gregus did not consult with Officer Hendricks or Officer Puccio prior to applying for the Complaint-Warrant.

62.    In weighing the existence of probable cause, Judge Borow was not provided, nor did he use the surveillance video footage.

63.    Defendant Stimmel knew that his statements to Defendant Gregus were false and any factual determination drawn therefrom was unsupported by any evidence.

64.    Defendant Stimmel, through the New Brunswick Police Department, recklessly instituted criminal proceedings without any reasonable basis and without probable cause.

65.    The Complaint-Warrant charged Lieutenant Nabi with aggravated assault in violation of N.J.S.A. § 2C:12-1B(2) and possession of a weapon for an unlawful purpose in violation of N.J.S.A. § 2C:39-5d.  Bail was set at $25,000 with no 10% option.

### THE RECKLESS DISREGARD FOR THE TRUTH

66.    On June 21, 2017, Defendant Gregus testified at the trial of Lieutenant Nabi that sometime *after* he interviewed Defendant Stimmel he went to the Golden Rail in an attempt to retrieve the video.

67.    Defendant Gregus testified under oath that he was unable to obtain a copy of the video because the owner was not there to provide said video.

68.     On May 14, 2014, at approximately 3:10 PM, Defendant Edward Ellsworth, the manager for Defendant TGR on the night of the incident, provided a copy of the surveillance video to Defendant Gregus.

69.     Defendant Ellsworth provided four (4) separate video files from four different cameras positioned throughout The Golden Rail.

    a.  One of the video files provided is from the Golden Rail's "Camera 1" which is directed at the front entrance of the Golden Rail from the interior of the Golden Rail.  Camera 1 runs from 12:51:21 to 12:51:48 and shows Lieutenant Nabi entering the Golden Rail and being "carded" at approximately 12:51:31.

    b.  One of the video files provided is from the Golden Rail's "Camera 4" which is directed at the front entrance of the Golden Rail from the exterior of the Golden Rail.  Camera 4 runs from 1:18:43 to 1:22:24 and shows Lieutenant Nabi being ejected from the Golden Rail at approximately 1:21:48.

    c.  One of the video files provided is from the Golden Rail's "Camera 8" which is directed at the dancefloor area of the Golden Rail looking across the entirety of the bar.  Camera 8 runs from 1:20:26 to 1:22:04 and shows in detail the incident that occurred between Defendant Stimmel and Lieutenant Nabi.

    d.  The final video file contains an array of all sixteen (16) of the Golden Rail's cameras with all captured footage playing simultaneously from 1:20:06 to 1:21:57.

70.     Defendant Gregus drafted a New Brunswick Police Department Supplemental Investigation Report wherein it is confirmed that "On May 14, 2014 . . . [c]opies of surveillance videos were obtained form the owner of the Golden Rail which captured the incident taking place."

71.     On May 10, 2014, prior to applying to Judge Borow for a Complaint-Warrant, Defendant Gregus could not have watched the incident video because copies of the video were not provided to the New Brunswick Police Department until May 14, 2015.

72.     The sole basis for probable cause against Lieutenant Nabi was the "victim statement."

73.     On June 17, 2017, while under oath, Defendant Gregus testified that "*based off the video* and the statement from the victim*, I decided that probable cause* was -- there was enough probable cause to charge the *victim*."

74.     On March 30, 2018, Defendant Gregus submitted a certification to the Court, pursuant to 28 U.S.C. § 1746 and subject to the penalties for perjury, that stated:

> There was probable cause to arrest Plaintiff Najib Nabi for aggravated assault and possession of a weapon for an unlawful purpose based on the reports drafted on May 6, 2014, the statements provided by Mr. Stimmel, *and review of the surveillance video*. (ECF No. 5-4 at p. 49, ¶10) [emphasis added]

75.     Defendant Gregus did not use the "surveillance video" to support the probable cause used to obtain a Complaint-Warrant against Lieutenant Nabi.

76.     Defendant Gregus has attempted to conceal, through deceit, the fact that the video was not used to support probable cause prior to applying for the Complaint-Warrant on May 10, 2014.

77.     Defendant Gregus has misrepresented the basis for the probable cause against Lieutenant Nabi, under oath, on two separate occasions.

78.     The probable cause against Lieutenant Nabi was solely the "victim statement" taken by Defendant Gregus.

79.     Defendant Gregus testified at the trial of Lieutenant Nabi that prior to making the arrest of Lieutenant Nabi he had reviewed the video.

80.     Prior to arresting Lieutenant Nabi, Defendant Gregus knew or should have known the surveillance video did not support Defendant Stimmel's "victim statement" such that the probable cause to support the issuance of a Complaint-Warrant was invalid.

81.     Defendant Gregus willful disregard for the truth caused him to subsequently reinvent the narrative by interjecting the use of the surveillance video into the probable cause determination.

82.     Defendant Gregus did not use the video to support probable cause.

83.     The existence of the surveillance video footage undermined any and all trustworthiness in the information provided by Defendant Stimmel.

84.     The criminal proceedings were initiated against Lieutenant Nabi without probable cause.

85.     On May 21, 2014 at 7:11 PM, Defendant Stimmel wrote an email to Ms. Ruth Anne Koenick, Director of the Office for Violence Prevention and Victim Assistance at Rutgers, the State University of New Jersey.

86.     In the aforementioned email Defendant Stimmel expressed his frustration with the New Brunswick Police Department's and Detective Gregus; stating specifically:

> [ ]I learned today that the NBPD have still not arrested the suspect in my case despite apparently overwhelming evidence against him, which includes video and other conclusive evidence.
> [ ]
> I have been in frequent contact with Detective Gregus of the NBPD, and he has promised me on 3 separate occasions now that he would arrest the suspect in the "next few days," but weeks are going by and no action is taking place.

87.     On May 24, 2014 at 6:10PM, Defendant Stimmel wrote Ms. Koenick again to state his frustrations with the NBPD and Detective Gregus, stating:

> [ ]I guess what really gets to me is when I'm told [Lieutenant Nabi] will be arrested 'very soon' on multiple previous occasions and then there is no action. [ ] I just wish I could have a realistic timeline as to when this individual will actually be brought to justice [ ].

88.     On May 24, 2014, Ms. Koenick replied to Defendant Stimmel, stating "I will call Detective Gregus on Tuesday . . . just to find out if he has some idea when an arrest will be made and to express my concern about the length of time this is taking."

89.     Upon information and belief, Defendant Stimmel repeatedly pressured the New Brunswick Police Department to arrest Lieutenant Nabi.

90.     Defendant Stimmel knew that he previously lied to Defendant Gregus and the New Brunswick Police Department.

91.     Upon information and belief, the City of New Brunswick has acquiesced to a long-standing practice and/or custom which constitutes the standing operating procedure of the police department that were a direct or proximate cause of the unconstitutional conduct of Defendant Gregus.  These de facto policies, practices, and/or customs, include, *inter alia*: the blatant disregard by the New Brunswick Police Department of applicable legal procedures designed to preserve the right of citizens to be free from unreasonable seizures and unlawful arrests.

92.     The City of New Brunswick by and through the New Brunswick Police Department has failed to effectively train and discipline their police officers, to include Defendant Gregus, to

prevent the unconstitutional conduct complained of herein thereby allowing Defendant Gregus to be in a position to unlawfully arrest Lieutenant Nabi and to otherwise cause him injury and to violate his federal and state constitutional rights.

93.     On Friday, May 30, 2014, Defendant Gregus and Detective Martinez of the New Brunswick Police Department arrested Lieutenant Nabi at his home.

94.     Lieutenant Nabi was subjected to arrest and detainment pursuant to legal process, was forced to post a bail, was compelled to attend all court proceedings, was ordered to refrain from travel, and compelled to attend a jury trial all which constitute a deprivation of liberty consistent with the concept of a seizure.

95.     Lieutenant Nabi was arrested without probable cause by Defendant Gregus who, under the facts available or easily obtainable to him at the time, did not and/or should not have an objective, good faith belief that Lieutenant Nabi committed the aforementioned criminal charges.

96.     Lieutenant Nabi's arrest was in violation of his rights under the Fourth Amendment of the United State Constitution to be free from unreasonable arrest and his right under the Fourteenth Amendment of the United States to due process of law and the Eighth Amendment right to be free from excessive bail.

97.     Defendant Gregus knew, or should have known, that the prior assertions to Judge Borow were in reckless disregard for the truth and not based upon reasonably trustworthy information such that at the time the arrest was made, probable cause did not exist.

98.     During the arrest of Lieutenant Nabi, Defendant Gregus made certain statements to Lieutenant Nabi which evince the constraints on his discretionary decisions by the aforementioned unlawful policies or customs of Defendant City of New Brunswick by and through the New Brunswick Police Department, specifically:

      a.  Defendant Gregus apologized to Lieutenant Nabi for having to execute the arrest;

      b.  Defendant Gregus expressed his opinion that Lieutenant Nabi was not guilty of any offense;

      c.  Defendant Gregus told Lieutenant Nabi the arrest was tied to the insistence of the alleged victim, Defendant Stimmel;

      d.  Defendant Gregus encouraged Lieutenant Nabi to hire a specific attorney, to wit, Mr. Joseph Benedict of the law firm Benedict & Altman;

     e.    Defendant Gregus advised Lieutenant Nabi to inform Mr. Benedict that there was a video of the incident which shows Lieutenant Nabi was not guilty of any offense and that Defendant Stimmel was in fact the aggressor;

     f.    Defendant Gregus specifically told Mr. Nabi to show said video to his lawyer

99.    Defendant Gregus acted maliciously, willfully, and knowingly, and with specific intent to deprive Lieutenant Nabi of his right to freedom from unlawful arrest, seizure, and detention.

100.    Prior to Lieutenant Nabi's arrest, Defendant Gregus was previously represented by the law firm of Benedict & Altman and was familiar with Joseph Benedict, the partner and founding member of Benedict & Altman.

101.    Upon information and belief, Benedict & Altman is a boutique law firm comprised of four (4) attorneys located at 247 Livingston Avenue, New Brunswick, Middlesex County, New Jersey.

102.    At the time of Lieutenant Nabi's arrest, Defendant Gregus was actively being represented by the law firm Benedict & Altman in Hernandez, et al. v. Kaplan, et al., docket number 3:13-cv-01556-JAP-DEA.

103.    Defendant Gregus has subsequently been represented by the law firm Benedict & Altman in Stallings v. City of New Brunswick, et al., docket number 3:15-cv-05254-PGS-DEA.

104.    Upon the recommendation of Defendant Gregus, Lieutenant Nabi retained Mr. Joseph Benedict of the law firm Benedict & Altman.

105.    Following the arrest of Lieutenant Nabi, Defendant Gregus called Defendant Stimmel to inform him of the arrest.

106.    After Lieutenant Nabi's arrest, the matter was prosecuted by Defendant Middlesex County Prosecutor's Office (hereinafter, "MCPO"). Assistant Prosecutor Christopher Schellhorn was originally assigned the file.

107.    In or around July 2014, Defendant Stimmel authored a handwritten Adult Case Victim Impact Statement submitted to Defendant MCPO in which he demanded that Lieutenant Nabi "be punished and receive the maximum penalty possible." [emphasis in original]

108.    Upon information and belief this letter was submitted to Defendant MCPO pursuant to N.J.S.A. § 52:4B-36(m) and was to be used in the prosecutor's "final decision concerning whether formal criminal charges will be filed."

109.    Upon information and belief, Assistant Prosecutor Schellhorn recommended that the charges against Lieutenant Nabi be administratively dismissed.

110.    Assistant Prosecutor Schellhorn left Defendant MCPO in or around September 2014 for the Morris County Prosecutor's Office.

111.    The criminal prosecution was then assigned to Defendant Mannion.

112.    On October 16, 2014. upon the insistence of Mr. Benedict, Detective Ryan Tighe of Defendant MCPO interviewed and took video recorded statement of witness Zak Goeb.

113.    Mr. Goeb's statement regarding the incident that occurred on May 5-6, 2014 to Defendant MCPO is corroborated by the video surveillance footage in the possession of Defendant MCPO.  Furthermore, Mr. Goeb's statement to Defendant MCPO invalidates Defendant Stimmel's prior statements to Defendant NBPD and Defendant Gregus.

114.    On October 29, 2014, upon the insistence of Mr. Benedict, Detective Ryan Tighe of Defendant MCPO interviewed and took the video recorded statement of witness Faizah Nabi.

115.    Ms. Nabi's statement regarding the incident that occurred on May 5-6, 2014 to Defendant MCPO is corroborated by the video surveillance footage in the possession of Defendant MCPO.  Ms. Nabi's statement further corroborates Mr. Goeb's prior statement.  Ms. Nabi's statement also invalidated Defendant Stimmel's prior statements to Defendant NBPD and Defendant Gregus.

116.    Despite the video evidence and statements undermining the validity of Defendant Stimmel's clear fabrications, Defendant Mannion did not follow the recommendations of Assistant Prosecutor Schellhorn.

117.    A grand jury presentation was scheduled for February 25, 2015.

118.    By email dated February 20, 2015, Mr. Benedict disclosed to Defendant Mannion that Faizah Nabi was willing to testify before the grand jury and requested that she be given the opportunity to do so.

119.    Defendant Mannion presented the matter of State of New Jersey v. Najib K. Nabi to the members of the grand jury.

120.    Defendant Stimmel did not testify before the grand jury, instead Defendant Gregus summarized his May 10, 2014 interview to the grand jurors.

121.    Defendant Gregus knew, or should have known, that his testimony before the grand jury was false and misleading.  Nevertheless, Defendant Gregus testified that:

He [Mr. Stimmel] was actually monitoring a crowd.  He was assigned as a bouncer. He was at the back of the bar at which he observed the suspect, Mr. Najib Nabi, attempting to cause a fight inside the bar at which he got in between the fight and attempted to separate the parties.  When he attempted to separate the parties Mr. Nabi refused to leave and attempted to start the fight again, at which time he grabbed him from behind and Mr. Nabi has a glass in his hand and when he reacted, I guess, by Jos -- Mr. Stimmel grabbing him, he hit him in the face twice.  The first time it caused the glass to actually break and when he hit him up the second time is when he slit him in the face, actually hitting a major artery.

122.     Defendant MCPO and Defendant Mannion did not play the surveillance video footage during the testimony of Defendant Gregus.

123.     During the course of his testimony, Defendant Mannion asked Defendant Gregus what the video surveillance footage showed, to which Defendant Gregus simply responded, "It showed the incident taking place."

124.     Mr. Goeb and Faizah Nabi did not testify before the grand jury.

125.     Detective Tighe of Defendant MCPO testified as to his interview of Mr. Goeb and Faizah Nabi.

126.     Detective Tighe's testimony to the grand jury omitted key statements made by Mr. Goeb and Ms. Nabi that undermined the State's narrative.  Moreover, Detective Tighe's testimony interjected statements allegedly made by Ms. Nabi that she unequivocally did not make.

127.     During the testimony of Detective Tighe, Defendant Mannion played the surveillance video footage contained in the "overlay of all 16 cameras."

128.     Defendant Mannion did not play the isolated footage captured by "Camera 8" for the members of the grand jury.

129.     Defendant MCPO and Defendant Mannion did not play any other surveillance video footage for the benefit of the grand jurors.

130.     Defendant MCPO and Defendant Mannion presented the testimony of Detective Matthew Domanic of Defendant MCPO.

131.     On or about December 16, 2014, Defendant Domanic took the video recorded statement of Mr. Edward Zappulla, the disco jockey ("DJ") working the night of the subject incident.

132.     Defendant Domanic testified to and summarized the statement of Mr. Zappulla.

133.    On or about February 15, 2017, Mr. Zappulla recanted portions of his December 16, 2014 statement.

134.    Defendant MCPO and Defendant Mannion knowingly and willfully infringed upon the grand jury's decision-making function by willfully subverting its independence through deceit.

135.    Defendant MCPO and Defendant Mannion knew or should have known the proceedings were initiated without valid probable cause.

136.    Based upon the false information presented to the Grand Jury, Indictment No. 15-03-00289-I procured by fraud, perjury, and/or other corrupt means, was issued against Plaintiff. Defendant Gregus, Defendant MCPO, and Defendant Mannion deceived the members of the grand jury as to the quality of the evidence and testimony presented.

137.    In March 2015, Lieutenant Nabi terminated the services of Mr. Benedict and retained new counsel.

138.    During the course of the criminal investigation and/or prosecution of Lieutenant Nabi, Defendant Stimmel continued to send correspondence to Defendant MCPO and/or Defendant NBPD.

139.    In an undated, three-page typed letter addressed to Prosecutor Andrew C. Carey of Defendant MCPO, Defendant Stimmel continues his reckless disregard for the truth and the malicious and false representation of the facts, stating in part:

> [Lieutenant Nabi's] assault on me was not impulsive or accidental, but rather it was deliberate and intentional, which his further evidenced by him strike me several times with glass.  [Lieutenant Nabi] knew I was a bounce and that I was trying to peacefully mitigate the physical conflict he started with another bar patron.  I identified myself as a bouncer by stepping in between him and the other bar patron he was attacking, reaching my arms out in between them, asking [Lieutenant Nabi] what was wrong, and order him to stop his actions.  He saw me because I stood right in between him and the other patron he was attacking, but he deliberately disregarded me as he attempted to physically strike another bar patron.  [Lieutenant Nabi] showed a propensity of aggression and violence towards other innocent bar patrons, which he then directed on me.
>
> [ ]
>
> To allow [Lieutenant Nabi's] actions to have absolutely no permanent consequences on him or his criminal record, despite me having to endure permanent consequences, is absolutely unacceptable to me.  I cannot accept a simple order for community service with no criminal record for [Lieutenant Nabi].  [Lieutenant Nabi's] plea, if accepted, would be a gross miscarriage of justice and will

traumatize me further.  I implore you to stand up for me and assure me that there is hope for victims of violent crime like myself that our justice system will properly represent their best interest and ensure criminals are appropriately punished for their wrongs.

140.    On or about February 24, 2017, as part of ongoing discovery Defendant MCPO disclosed a handwritten letter authored by Defendant Stimmel dated June 17, 2014  This letter was marked by Defendant MCPO as NN 54 through NN 56

141.    The aforementioned handwritten letter drafted and executed by Defendant Stimmel continued his reckless disregard for the truth and perpetuated the false and malicious narrative concerning the incident on May 5-6, 2014, stating in part:

> The patron that injured me was standing about 15 feet away from me. I heard girls yelling stop and pulling him back.  I was near the rear exit door on a raised are.  He was near the DJ table, or entrances near the bathroom.  I saw him lunging forward or pushing.  After that I got between the person he lunged at and the action who assaulted me.  I put my arms out to separate them and asked, 'what's going on, stop.'  The actor ignored my commands.  They [sic] two people turned, and the actor started striking the other person.  I ended up behind the actor. Once I saw the actor hitting the other person, I tried to pull him away by reaching around his waist. [ ]
> I have reviewed this 3 page statement with my attorney and it is true and correct.

142.    Defendant Mannion and/or Defendant MCPO knew or should have known the written statement submitted by Defendant Stimmel on or about June 17, 2014 was false. Nevertheless, in a willful disregard for the material falsities contained therein, Defendant Mannion and/or Defendant MCPO elected to continue in the prosecution of Lieutenant Nabi.

143.    Defendant MCPO, Defendant NBPD, Defendant Gregus, Defendant Mannion, Defendant Abrams knew or should have known that any and all of Defendant Stimmel's statements were false and misleading.  Defendant MCPO, Defendant NBPD, Defendant Gregus, Defendant Mannion, Defendant Abrams acted with reckless disregard for the truth and continued to prosecute Lieutenant Nabi.

144.    Upon information and belief, Defendant Stimmel also contacted the New Jersey Army National Guard to inform Lieutenant Nabi's military superiors of the incident, and the charges filed against Lieutenant Nabi.  In fact, Lieutenant Nabi had already informed his chain-of-command of the incident.  The baseless charges against Lieutenant Nabi cost him an overseas

deployment with the New Jersey Army National Guard with lost wages of approximately $100,000.00.

145.    Defendant Mannion retired while the criminal matter was pending and thereafter the case was assigned to Defendant Abrams.

146.    Defendant Abrams was presented with the opportunity to dismiss the baseless charges against Lieutenant Nabi, but with a willful disregard for the truth, continued in the baseless prosecution of Lieutenant Nabi.

147.    Following jury selection, the trial in State of New Jersey v. Najib K. Nabi commenced on June 20, 2017.

148.    On June 20, 2017, Defendant Abrams and/or Defendant MCPO summoned Defendant Stimmel to testify before the jury.

149.    Defendant Abrams and/or Defendant MCPO knew, or should have known, the testimony of Defendant Stimmel was false, but with a reckless disregard for the truth, suborned perjury and permitted Defendant Stimmel to lie under oath.

150.     On June 28, 2017, a jury returned a verdict of not guilty on all counts of the indictment against Lieutenant Nabi.

151.    As described more thoroughly herein, the filing of the criminal complaint, arrest, grand jury presentation, and prosecution of Lieutenant Nabi were for purposes other than to bring Lieutenant Nabi to justice.

152.    Following his acquittal, Lieutenant Nabi provided notices pursuant to N.J.S.A. § 59:1-1, *et seq.*

## FIRST CAUSE OF ACTION
## (INTENTIONAL TORT)

153.    Plaintiff incorporates by reference the allegations set forth in all proceeding paragraphs as if fully set forth herein.

154.    Defendant, Stimmel, without just cause or provocation, assaulted Lieutenant and committed an act of battery when he rushed Lieutenant Nabi, from behind, and placed Lieutenant Nabi in a choke hold, making it impossible for Plaintiff to breath.

155.    As a direct and proximate result of Defendant, Stimmel's actions, Lieutenant Nabi suffered damages including, but not limited to, severe pain and suffering, and extreme emotional distress.

WHEREFORE, Plaintiff hereby demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, costs of suit, counsel fees, and any other relief this court deems just and equitable.

## SECOND CAUSE OF ACTION
## (NEGLIGENCE)

156.    Plaintiff incorporates by reference the allegations set forth in all proceeding paragraphs as if fully set forth herein.

157.    Defendant, Stimmel, at the time of the incident set forth herein, was acting in the scope of his employment as security for Defendant, TGR and / or XYZ Corporation (1-50).  In that capacity, Defendant Stimmel owed Lieutenant Nabi, as a patron of Defendant, TGR and/ or XYZ Corporation (1-50) a duty to act within the scope of his employment and training.

158.    Defendant, Stimmel, breached that duty by placing Lieutenant Nabi in a chokehold, without any cause or provocation, and for failing to attempt alternate methods to control the situation.

159.    As a direct and proximate cause of Defendant Stimmel's negligent, careless, reckless and/or grossly negligent or intentional conduct, Lieutenant Nabi suffered damages including, but not limited to, severe pain and suffering, and extreme emotional distress.

WHEREFORE, Plaintiff hereby demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, costs of suit, counsel fees, and any other relief this court deems just and equitable.

## THIRD CAUSE OF ACTION
## (VICARIOUS LIABILITY/RESPONDEAT SUPERIOR)

160.    Plaintiff incorporates by reference the allegations set forth in all proceeding paragraphs as if fully set forth herein.

161.    At all times relevant hereto, Defendants TGR and XYZ Corporations 1-50 employed Defendant Stimmel, Defendant Ellsworth, and Defendant McCaffery.  Defendant Stimmel, Defendant Ellsworth, and Defendant McCaffery was under TGR's, John & Jane Does 1-50's, and XYZ Corporations 1-50's  direct supervision, employ, and control when each committed the wrongful and negligent acts described herein.  Defendant Stimmel, Defendant Ellsworth, and Defendant McCaffery engaged in this conduct while acting in the course and scope of his

19

employment with Defendants TGR and XYZ Corporations 1-50 and/or accomplished his wrongful and negligent acts by virtue of his job-created apparent authority.

162.    Defendants granted Defendant Stimmel, Defendant Ellsworth, and Defendant McCaffery authority to perform as an agent within TGR.   The Defendants held Defendant Stimmel, Defendant Ellsworth, and Defendant McCaffery out to the public as a fit and competent agent.   Defendant Stimmel, Defendant Ellsworth, and Defendant McCaffery committed the acts alleged within the apparent authority arising from his agency.   Said conduct was undertaken in the course and scope of Defendant Stimmel, Defendant Ellsworth, and Defendant McCaffery employment with TGR and XYZ Corporations 1-50 and/or was ratified by TGR and XYZ Corporations 1-50.

163.    Defendant Stimmel, Defendant Ellsworth, and Defendant McCaffery was acting at least in part to serve the interests of his employer when he committed the wrongful and negligent acts alleged herein.   Specifically, Defendant Stimmel was acting as an agent, as well as using the trust, power, and authority of the position granted, while he was overseeing the crowd located at Defendant TGR.

164.    Defendant Stimmel, Defendant Ellsworth, and Defendant McCaffery acts were foreseeable.

165.    As a direct and proximate result of Defendants' negligent conduct, Plaintiff has suffered injuries and damages described herein.

WHEREFORE, Plaintiff hereby demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, costs of suit, counsel fees, and any other relief this court deems just and equitable.

## FOURTH CAUSE OF ACTION
### (NEGLIGENCE)

166.    Plaintiff incorporates by reference the allegations set forth in all proceeding paragraphs as if fully set forth herein.

167.    By establishing and operating a local tavern, encouraging patrons to conduct business at TGR, and holding TGR to be a safe environment to engage in that which is commercially offered, Defendants entered into an express or implied duty to provide a reasonably safe environment for Plaintiff and all patrons.

168.    By permitting Plaintiff, Lieutenant Nabi, into its premise, Defendants, TGR and XYZ Corporations 1-50 had a duty to protect and care for the Plaintiff while conducting business at The Golden Rail.

169.    Defendant Ellsworth, Defendant McCaffery, Defendant TGR and/or XYZ Corporations 1-50 breached their duty to provide a reasonably safe environment and their duty to protect and care for the Plaintiff when they allowed Defendant Stimmel to attack the Plaintiff.

170.    The acts of Defendant Stimmel were reasonably foreseeable.

171.    As a direct and proximate result of Defendants' negligent conduct, Plaintiff has suffered the injuries and damages described herein.

WHEREFORE, Plaintiff hereby demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, costs of suit, counsel fees, and any other relief this court deems just and equitable.

## FIFTH CAUSE OF ACTION
### (NEGLIGENT HIRING AND SUPERVISION)

172.    Plaintiff incorporates by reference the allegations set forth in all proceeding paragraphs as if fully set forth herein.

173.    At all times, Defendant Stimmel was under the direction, supervision and control of Defendant Ellsworth, Defendant McCaffery, Defendant TGR, XYZ Corporations 1-50 and/or John & Jane Does 1-50.

174.    At all times, Defendants Stimmel, Defendant Ellsworth, Defendant McCaffery and John & Jane Does 1-50 were under the direction, supervision and control of Defendants TGR and XYZ Corporations 1-50.

175.    By establishing and operating a local tavern, encouraging patrons to conduct business at TGR, and holding TGR to be a safe environment to engage in that which is commercially offered, Defendants entered into an express or implied duty to provide a reasonably safe environment for Plaintiff and all patrons.

176.    Defendants further assumed this duty by holding Defendant Stimmel out to the public, including Plaintiff, as a competent and trustworthy member of TGR's security team.

177.    Defendant Ellsworth, Defendant McCaffery, Defendant TGR, Defendant John & Jane Does, and/or XYZ Corporations 1-50 negligently retained, trained, and supervised Defendant

Stimmel when the Defendants knew or should have known that Defendant Stimmel posed a threat of assaulting members of the public.

178.    Defendants were aware of past incidents involving members of bar security assaulting patrons.    Moreover, Defendants were aware of past complaints alleged against employees of TGR.

179.    Despite this knowledge, of Defendant Ellsworth, Defendant McCaffery ,b Defendants John & Jane Does 1-50, Defendant TGR, and/or XYZ Corporations 1-50 failed to exercise reasonable care in training and supervising the Defendant Stimmel.

180.    As a direct result Plaintiff has suffered the injuries alleged herein.

WHEREFORE, Plaintiff hereby demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, costs of suit, counsel fees, and any other relief this court deems just and equitable.

## SIXTH CAUSE OF ACTION
### (NEGLIGENT SUPERVISION)

181.    Plaintiff incorporates by reference the allegations set forth in all proceeding paragraphs as if fully set forth herein.

182.    At all times material hereto, Defendant Stimmel was employed by, and/or was an Agent of Defendants John & Jane Does 1-50, TGR, and/or XYZ Corporations 1-50.  Defendant Stimmel was under Defendant TGR and/or Defendant Ellsworth and/or Defendant McCaffery and/or John and Jane Does 1-50 direct supervision, employ and control when he committed the wrongful acts alleged herein.  Defendant Stimmel engaged in the wrongful conduct while acting in the course of his employment with Defendants TGR and XYZ Corporations 1-50 and/or accomplish the wrongful acts by virtue of his job-created authority as bar security.

183.    Defendants had a duty to supervise Defendant Stimmel while performing his employee function of bar security.

184.    Defendants failed to prevent the foreseeable misconduct of Defendant Stimmel from causing harm to others, including the Plaintiff Lieutenant Nabi.

185.    As a direct result of Defendants negligent conduct, Plaintiff has suffered the injuries and damages described herein.

WHEREFORE, Plaintiff hereby demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, costs of suit, counsel fees, and any other relief this court deems just and equitable.

## SEVENTH CAUSE OF ACTION
## (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

186. Plaintiff incorporates by reference the allegations set forth in all proceeding paragraphs as if fully set forth herein.

187. As a direct and proximate result of the negligent, reckless and/or grossly negligent or intentional conduct of the Defendants, Plaintiff has suffered emotional distress which resulted from the wrongful or negligent acts of Defendant Stimmel.

WHEREFORE, Plaintiff hereby demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, costs of suit, counsel fees, and any other relief this court deems just and equitable.

## EIGHTH CAUSE OF ACTION
## (MALICIOUS PROSECUTION)

188. Plaintiff incorporates by reference the allegations set forth in all proceeding paragraphs as if fully set forth herein.

189. Defendant Stimmel was inextricably connected to the institution of a criminal action against Plaintiff, Lieutenant Nabi.

190. Defendant Stimmel's institution of the criminal action was actuated by malice.

191. There is a complete absence of probable cause for the institution of the criminal action against Lieutenant Nabi or the proceedings which followed.

192. The proceedings were terminated favorably to Lieutenant Nabi in that a jury returned a verdict of not guilty on all counts.

193. As a direct and proximate result of Defendant Stimmel's malicious prosecution of Lieutenant Nabi, Lieutenant Nabi suffered, and continues to suffer damages, as set forth above.

WHEREFORE, Lieutenant Nabi demands judgment against Defendant Stimmel seeking compensatory and punitive damages, costs of suit and counsel fees, and any other relief this Court deems just and equitable.

## NINTH CAUSE OF ACTION
## (MALICIOUS PROSECUTION)

194.    Plaintiff incorporates by reference the allegations set forth in all proceeding paragraphs as if fully set forth herein.

195.    Defendant Gregus, Defendant Mannion, Defendant Abrams were inextricably connected to instituting and/or perpetuating the criminal judicial proceeding against Lieutenant Nabi

196.    Defendant Gregus, Defendant Mannion, Defendant Abrams, individually and collectively, lacked any reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinarily prudent person in believing Lieutenant Nabi was guilty of the offenses charged.

197.    Defendant Gregus, Defendant Mannion, Defendant Abrams actions, individually and collectively, acted intentionally without just cause or excuse.

198.    There was a complete absence of probable cause for the institution of the criminal action against Lieutenant Nabi and for the proceedings which followed.

199.    The proceedings were terminated favorably to Lieutenant Nabi in that a jury returned a verdict of not guilty on all counts.

200.    As a direct and proximate result of the State actor Defendants' malicious prosecution of Lieutenant Nabi, Lieutenant Nabi suffered, and continues to suffer damages, as set forth above.

WHEREFORE, Lieutenant Nabi demands judgment against Defendants seeking compensatory and punitive damages, costs of suit and counsel fees, and any other relief this Court deems just and equitable.

## TENTH CAUSE OF ACTION
## 42 U.S.C. § 1983

201.    Plaintiff incorporates by reference the allegations set forth in all proceeding paragraphs as if fully set forth herein.

202.    Defendant Gregus prior to arresting Plaintiffs, obtained a warrant authorizing arrest by making false statements and/or omission that created a falsehood.

203.    Defendant Gregus made those false statements and/or omission either deliberately, or with reckless disregard for the truth.  Defendant Gregus failed to inform Judge Borow of the existence of the surveillance video footage at the time the telephonic warrant was sought.

204.    Defendant Gregus' false statements or omissions were material, or necessary, to the finding of invalid probable cause for the arrest warrant.

205.    Each such alleged act committed by Defendant Gregus were the proximate cause of all injuries and damage to Plaintiff in violation of his constitutional rights secured by the Fourth and Fourteenth Amendment to the Constitution of the United States and by Title 42, United States Code, Sections 1983 and 1988.

WHEREFORE, Lieutenant Nabi demands judgment against Defendants seeking compensatory and punitive damages, costs of suit and counsel fees, and any other relief this Court deems just and equitable.

## ELEVENTH CAUSE OF ACTION
### 42 U.S.C. § 1983

206.    Plaintiff incorporates by reference the allegations set forth in all proceeding paragraphs as if fully set forth herein.

207.    Plaintiff was unlawfully arrest by Defendant Gregus under color of New Jersey State Law and under color of state law and his official capacity and within the scope of his employment as a police officer for the Defendant City of New Brunswick by and through the New Brunswick Police Department.

208.    Plaintiff was arrested without probable cause by Defendant Gregus who, under the facts available or easily obtainable to them at the time, did not and/or should not have an objective, good faith belief that Plaintiff committed the aforementioned criminal charges.  At no time pertinent hereto did Defendant Gregus or any other defendant have probable cause to believe Plaintiff had committed or was committing the aforementioned criminal charges.

209.    Plaintiff's arrest was in violation of his rights under the Fourth Amendment of the United States Constitution to be free from unreasonable arrest and his right under the Fourteenth Amendment of the United States Constitution to due process of law.

210.    Defendant Gregus, and any other defendant, acted maliciously, willfully, knowingly, and with specific intent to deprive Plaintiff of his right to freedom from unlawful arrest, seizure, and detention.

211.    Each such alleged act committed by Defendant Gregus were the proximate cause of all injuries and damage to Plaintiff in violation of his constitutional rights secured by the Fourth and Fourteenth Amendment to the Constitution of the United States and by Title 42, United States Code, Sections 1983 and 1988.

212.    Upon information and belief, at all times material hereto, defendant, the City of New Brunswick, acting through the New Brunswick Police Department, had policies, practice, customs and/or usages which were a direct and proximate cause of the unconstitutional conduct alleged herein, including: (a) unlawful arrest and detention and (b) malicious prosecution.  Each such policy, practice, custom, and/or usage caused injury and damage in violation of Plaintiff's constitutional rights secured by the Fourth and Fourteenth Amendments to the Constitution of the United States, and by Title 42, United States Code, Sections 1983 and 1988.

WHEREFORE, Lieutenant Nabi demands judgment against Defendants seeking compensatory and punitive damages, costs of suit and counsel fees, and any other relief this Court deems just and equitable.

## TWELFTH CAUSE OF ACTION
### 42 U.S.C. § 1983

213.    Plaintiff incorporates by reference the allegations set forth in all proceeding paragraphs as if fully set forth herein.

214.    At all times relevant herein, Defendant Gregus, Defendant Mannion, and Defendant Abrams, under color of law, subjected Plaintiff and/or cause Plaintiff to be subjected to a deprivation of his rights, privileges, and/or immunities secured to him by the Constitution.

215.    The acts aforesaid were committed pursuant to a policy, statement, ordinance, and/or regulation, and/or decision officially adopted and promulgated by Defendants, and/or well settled custom or practice by Defendant City of New Brunswick and/or Defendant Middlesex County Prosecutor's Office.

216.    The acts were committed as a result of inadequate training and/or supervision by Defendants.

217.    As a direct and proximate result of Defendant's violations of Plaintiff's civil rights guaranteed to him by 42 U.S.C.§ 1983, Plaintiff suffered damages.

WHEREFORE, Lieutenant Nabi demands judgment against Defendants seeking compensatory and punitive damages, costs of suit and counsel fees, and any other relief this Court deems just and equitable.

## THIRTEENTH CAUSE OF ACTION
### 42 U.S.C. § 1983

218.    Plaintiff incorporates by reference the allegations set forth in all proceeding paragraphs as if fully set forth herein.

219.    Defendant Gregus, Defendant Mannion and Defendant Abrams initiated and/or continued the criminal proceedings against Plaintiff without probable cause and/or through fraud, perjury, or other corrupt means.

220.    By the aforementioned acts, Defendants lacked probable cause to initiation the legal proceeding.  Defendants acted with malice.

221.    Plaintiff suffered a deprivation of his personal liberty consistent with the concept of a seizure; to include the posting of bail, attending all court hearings including his trial and arraignment, and was prohibit from traveling.

222.    Each such alleged act committed by Defendants were the proximate cause of all injuries and damage to Plaintiff in violation of his constitutional rights secured by the Fourth and Fourteenth Amendment to the Constitution of the United States and by Title 42, United States Code, Sections 1983 and 1988.

223.    Each such alleged act committed by Defendants were the proximate cause of all injuries and damage to Plaintiff in violation of his constitutional rights secured by the Fourth and Fourteenth Amendment to the Constitution of the United States and by Title 42, United States Code, Sections 1983 and 1988.

WHEREFORE, Lieutenant Nabi demands judgment against Defendants seeking compensatory and punitive damages, costs of suit and counsel fees, and any other relief this Court deems just and equitable.

## FOURTEENTH CAUSE OF ACTION
### 42 U.S.C. § 1983

224.     Plaintiff incorporates by reference the allegations set forth in all proceeding paragraphs as if fully set forth herein.

225.     Defendant Stimmel is responsible for the malicious prosecution of Plaintiff in violation of his constitutional rights.

226.     Defendant Stimmel furnished false information to law enforcement and/or concealed material information from prosecuting authorities.

227.     Upon the aforementioned allegations, Defendant Stimmel as a private entity may be held to be a state actor such that he is liable under 42 U.S.C. § 1983.

228.     Defendant Stimmel exercised powers traditional the exclusive prerogative of the state.

229.     Defendant Stimmel acted with the help of or in concert with state officials.

230.     The state actors were in a position of interdependence with the Defendant Stimmel such that he must be recognized as a joint participant in the claim for malicious prosecution.

231.     Defendant Stimmel denied Plaintiff established constitutional rights through is actions as set forth herein.

232.     Each such alleged act committed by Defendant Still was the proximate cause of all injuries and damage to Plaintiff in violation of his constitutional rights secured by the Fourth and Fourteenth Amendment to the Constitution of the United States and by Title 42, United States Code, Sections 1983 and 1988.

WHEREFORE, Lieutenant Nabi demands judgment against Defendant Stimmel seeking compensatory and punitive damages, costs of suit and counsel fees, and any other relief this Court deems just and equitable.

## FIFTEENTH CAUSE OF ACTION
### PUNITIVE DAMAGES

233.     Plaintiff incorporates by reference the allegations set forth in all proceeding paragraphs as if fully set forth herein.

234.     The acts committed by Defendants aforesaid were done with actual malice and/or a wanton and willful disregard of person who foreseeably might be harmed by Defendants' actions.

235.     Plaintiff seeks punitive damages pursuant to N.J.S.A. § 2A:15-5.10, *et seq.*

WHEREFORE, Lieutenant Nabi demands judgment against Defendants for punitive damages, interest, counsel fees, costs of suit, and any other relief the Court deems just.

Respectfully submitted,

/s/ William Strazza, Esq.
William Strazza, Esq.
THE LAW OFFICE OF WILLIAM STRAZZA, ESQ.
560 Main Street
Chatham, New Jersey 07928
Voice: 973-387-8486
Fax: 973-339-7461
Email: ws@lowspc.com


/s/ Matthew J. Werner, Esq.
Matthew J. Werner, Esq.
THE LAW OFFICE OF WILLIAM STRAZZA, ESQ.
560 Main Street
Chatham, New Jersey 07928
Voice: 973-387-8486
Fax: 973-339-7461
Email: mjw@lowspc.com

## <u>CERTIFICATION  PURSUANT TO CIV. RULE 11.2 AND 28 U.S.C. §1746</u>

William Strazza, of full age, and an attorney in good standing and admitted to practice in the State of New Jersey and within the District Court for the District of New Jersey, upon his oath, hereby declares and says:

1.  The matter in controversy presented herein is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding; and

2.  I am not aware of any other party who should be named as a Defendant in the within matter.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 4, 2018.

<u>/s/ William Strazza, Esq.</u>
William Strazza, Esq.
THE LAW OFFICE OF WILLIAM STRAZZA, ESQ.
560 Main Street
Chatham, New Jersey 07928
Voice: 973-387-8486
Fax: 973-339-7461
Email: ws@lowspc.com