UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NAJIB NABI,<br><br>    Plaintiff,<br><br>v.<br><br>KEITH ABRAMS *et al.*,<br><br>    Defendants. | Civ. No. 18-4099<br><br>**OPINION** |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion for Judgment on the Pleadings brought by Defendants City of New Brunswick ("City Defendant") and Detective Brandt Gregus (collectively, "Moving Defendants"). (ECF No. 29.) Plaintiff Najib Nabi ("Plaintiff") opposes. (ECF No. 32.) The Court has decided the Motion based on the parties' written submissions and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, the Motion for Judgment on the Pleadings is granted.

## BACKGROUND

### I. The Incident on May 6, 2014

This civil rights action arises out of a bar fight and its subsequent prosecution. In the early hours of May 6, 2014, Plaintiff was a patron at the Golden Rail, a bar located in New Brunswick, New Jersey. (2d Am. Compl. ¶¶ 5, 19, ECF No. 19.) At around 1:21 AM, a confrontation arose between Plaintiff and another patron. (*See id.* ¶¶ 24–29; Surveillance Video at 01:21:10–16, Connell Certif. ¶ 9, ECF No. 29-2.) Shortly thereafter, Defendant Joseph

1

Stimmel, a bouncer, "rushed up behind [Plaintiff], and without warning, and without any justifiable cause, immediately placed [Plaintiff] in a submission choke hold." (2d Am. Compl. ¶¶ 2, 17, 30–37.) Defendant Stimmel then tried to forcibly remove Plaintiff from the Golden Rail. (*Id.* ¶¶ 37–46; *see also* Surveillance Video at 01:21:16–21.) The two toppled to the ground and Plaintiff "began swinging his free hand at [Defendant Stimmel] in an effort to break free." (2d Am. Compl. ¶¶ 38–40.)[1] During this resistance, Defendant Stimmel contends, Plaintiff broke a glass over Defendant Stimmel's face, injuring him badly. (*See id.* ¶¶ 56h, 121, 139.) Plaintiff admits, albeit in a prior version of the complaint, that "[Defendant] Stimmel was struck by glassware in the possession of [Plaintiff] prior to being assaulted by [Defendant] Stimmel." (Am. Compl. ¶ 29, ECF No. 1-1.) Other personnel from the Golden Rail responded; they removed Plaintiff from the establishment and told him to "go home." (2d Am. Compl. ¶¶ 43, 45.) The police arrived shortly afterwards.

## II. Defendant Gregus's Investigation and Application for a Complaint-Warrant

Four days later, on May 10, 2014, Defendant Gregus, a detective for the Police Department of City Defendant, began investigating the incident and contacted Defendant Stimmel. (*Id.* ¶¶ 8, 51.) Defendant Gregus recorded a statement from Defendant Stimmel on the same day, wherein Defendant Stimmel recounted his version of events and identified Plaintiff by name as his assailant (the "Victim Statement"). (*Id.* ¶¶ 53–56.) Later that same evening, Defendant Gregus applied to the Honorable Philip A. Borow, J.M.C. of the New Brunswick Municipal Court, for a Complaint-Warrant against Plaintiff. (*Id.* ¶ 58.)

---

[1] A surveillance video captures Defendant Stimmel's approach, but it fails to include any audio or context of how this interaction escalated. Indeed, the quality of the surveillance video is poor, and its blurry images do not document the injuries received by either party.

Plaintiff contends that Judge Borow did not consider, nor was he made aware of, the surveillance video at the time of the application. (*Id.* ¶¶ 58–62, 71.) It would have been impossible, Plaintiff argues, because the owner of the Golden Rail did not provide the surveillance video to Defendant Gregus until four days later, on May 14, 2014. (*Id.* ¶¶ 68–71.) Plaintiff thus infers that the "sole basis" for probable cause against Plaintiff at the time was Defendant Stimmel's Victim Statement. (*Id.* ¶¶ 72, 75, 78, 82.)

Plaintiff accuses Defendant Gregus of engaging in revisionist history. He asserts that Defendant Gregus has twice interposed the "review of the surveillance video" into the initial probable cause determination made by Judge Borow in reviewing the application for a Complaint-Warrant. First, Defendant Gregus testified at Plaintiff's trial that "*based off the video* and the statement from the victim, I decided that probable cause was—there was enough probable cause to charge [Plaintiff]." (*Id.* ¶ 73 (emphasis in original).) Second, Defendant submitted a certification to this Court, "There was probable cause to arrest Plaintiff . . . for aggravated assault and possession of a weapon for an unlawful purpose based on the reports drafted on May 6, 2014, the statements provided by [Defendant] Stimmel, *and review of the surveillance video*." (*Id.* ¶ 74 (emphasis in original) (quoting Gregus Certif. ¶ 10, Ex. E, ECF No. 5-4).)

Plaintiff argues that Defendant Gregus knew, or should have known, that his assertions to Judge Borow to obtain the Complaint-Warrant were in reckless disregard of the truth. (*Id.* ¶¶ 94–97.) Had Defendant Gregus actually reviewed the surveillance video at the time, Plaintiff asserts, it would have undermined the Victim Statement and prevented a finding of probable cause to charge Plaintiff. (*Id.* ¶¶ 80–84, 95–97.) In fact, Plaintiff alleges that Defendant Gregus made several statements to Plaintiff suggesting that Defendant Gregus knew his conduct was

wrong: apologizing to Plaintiff for executing the arrest, expressing his opinion that Plaintiff was not guilty of any offense, conveying that the arrest was at the insistence of Defendant Stimmel, encouraging Plaintiff to hire an attorney, and advising Plaintiff that a surveillance video existed showing Plaintiff was not guilty of any offense. (*Id.* ¶ 98a–f.)

### III. Plaintiff Is Charged, Arrested, Indicted, and then Acquitted

Judge Borow reviewed Defendant Gregus's application and eventually authorized Complaint-Warrant 1214-W-2014-000888, charging Plaintiff with (1) aggravated assault under N.J.S.A. § 2C:12-1B(2), and (2) possession of a weapon for an unlawful purpose under N.J.S.A. § 2C:39-5d. (2d Am. Compl. ¶¶ 58, 65.) Plaintiff was then arrested on May 30, 2014. (*Id.* ¶ 93.)

The Middlesex County Prosecutor's Office presented the case to a grand jury on February 25, 2015. (*Id.* ¶¶ 106, 109, 117, 119.) Defendant Stimmel did not testify before the grand jury; instead, Plaintiff alleges that Defendant Gregus simply provided a summary of the interview with him. (*Id.* ¶ 120.)[2] Though Defendants did not play the actual surveillance video—the one presented as an exhibit here with a single vantage point—Defendants did show a

---

[2] Specifically, Plaintiff alleges that Defendant Gregus testified to the following:

> He [Defendant Stimmel] was actually monitoring a crowd. He was assigned as a bouncer. He was at the back of the bar at which he observed the suspect, [Plaintiff], attempting to cause a fight inside the bar at which he got in between the fight and attempted to separate the parties. When he attempted to separate the parties [Plaintiff] refused to leave and attempted to start the fight again, at which time he grabbed him from behind and [Plaintiff] has a glass in his hand and when he reacted, I guess, by [Defendant Stimmel] grabbing him, [Plaintiff] hit [Defendant Stimmel] in the face twice. The first time it caused the glass to actually break and when he hit him up the second time is when he slit him in the face, actually hitting a major artery.

(2d Am. Compl. ¶ 121.)

4

surveillance video containing a sixteen-camera array covering multiple areas of the Golden Rail that night. (*Id.* ¶¶ 122, 127.) The grand jury indicted Plaintiff. (*Id.* ¶ 136.)

On June 20, 2017, a jury trial commenced in Plaintiff's criminal action. Defendant Gregus testified on June 21, wherein Defendant Gregus allegedly misrepresented the truth about his review of the surveillance video at the time he applied for the Complaint-Warrant. (*See id.* ¶ 73 (testifying that he determined probable cause "*based off the video* and the statement from the victim") (emphasis in original).) On June 28, 2017, the jury returned a not guilty verdict on all counts against Plaintiff. (*Id.* ¶ 150.) Plaintiff alleges that Defendant Gregus orchestrated, under knowingly false information, the criminal complaint, grand jury presentation, and prosecution. (*See id.* ¶ 151.)

## IV.    Procedural History of this Civil Action

On November 9, 2015, Defendant Stimmel filed a negligence action against Plaintiff in New Jersey Superior Court, Passaic County. On May 3, 2016, Plaintiff filed suit in New Jersey Superior Court, Somerset County. On September 16, 2016, these two matters were consolidated in New Jersey Superior Court, Middlesex County. A third suit, an action for a declaratory judgment filed by State Farm Fire & Casualty, was filed on February 2, 2017 and subsequently consolidated with the other two civil actions.

Plaintiff filed the First Amended Complaint on February 21, 2018, and Defendants removed the action to this Court on March 23, 2018. (*See* Notice of Rmv'l, ECF No. 1.) In April 2018, various Defendants filed motions to dismiss (ECF Nos. 3, 5), and on November 26, 2018, the Court dismissed New Brunswick Police Department and Middlesex County Prosecutor's Office. (Letter Op. and Order at 3, ECF No. 18.)

On December 14, 2018, Plaintiff filed the Second Amended Complaint, the operative

complaint, alleging fifteen counts. Of import here, Plaintiff alleges (Count IX) common law malicious prosecution against Defendant Gregus (2d Am. Compl. ¶¶ 194–200), (Counts X, XI, XIII) false arrest and malicious prosecution in violation of the Fourth Amendment via 42 U.S.C. § 1983 against Defendant Gregus (2d Am. Compl. ¶¶ 201–12, 218–23), and (Count XII) *Monell* liability against City Defendant (2d Am. Compl. ¶¶ 213–17).

Moving Defendants answered the Second Amended Complaint on December 14, 2018 (ECF No. 23) and moved for judgment on the pleadings on February 8, 2019. Plaintiff opposed on March 4, 2019 (ECF No. 32), and Moving Defendants replied on March 11, 2019 (ECF No. 33). On March 26, 2019, the parties stipulated to dismiss Thomas Mannion, Keith Abrams, and the Middlesex County Prosecutor's Office. (ECF Nos. 34–35.) On June 25, 2019, this action was reassigned to the Honorable Anne E. Thompson. (ECF No. 37.) Moving Defendants' Motion for Judgment on the Pleadings is currently before the Court.

## **LEGAL STANDARD**

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment on the pleadings "after the pleadings are closed . . . but early enough not to delay trial." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Garza v. Citigroup Inc.*, 724 F. App'x 95, 98-99 (3d Cir. 2018) (quoting *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)). Accordingly, in order to survive a motion for judgment on the pleadings, the plaintiff's factual allegations, taken as true and viewed in the light most favorable to him or her, provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also N.J. Physicians United Reciprocal Exch. v. Boynton & Boynton, Inc.*, 141 F. Supp. 3d 298, 302–03

(D.N.J. 2015).

When considering a Rule 12(c) motion, a district court should conduct a three-part analysis. *Cf. Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court must accept as true all well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016). However, the court may disregard any conclusory legal allegations. *Fowler*, 578 F.3d at 203. Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). A complaint which does not demonstrate more than a "mere possibility of misconduct" must be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## **DISCUSSION**

I. **Malicious Prosecution and False Arrest via § 1983 Against Defendant Gregus (Counts X, XI, and XIII)**

Plaintiff pleads Fourth Amendment violations against Defendant Gregus spread across three different counts in the Second Amended Complaint. (*See* 2d Am. Compl. ¶¶ 201–12, 218–23 (pleading Counts X, XI, and XIII).) Many, if not all, of the pertinent facts overlap among these claims. For purposes of this Motion, the Court construes the Second Amended Complaint as alleging § 1983 claims for malicious prosecution and false arrest against Defendant Gregus. These two claims encapsulate Plaintiff's three primary allegations: that Defendant Gregus (1) deliberately made a false statement to secure a warrant (Count X ¶ 203), (2) arrested Plaintiff

7

without probable cause (Count XI ¶¶ 207–08), and (3) initiated and/or continued criminal proceedings against Plaintiff without probable cause (Count XIII ¶¶ 219–20).

To prevail in a § 1983 action for malicious prosecution, a plaintiff must demonstrate five elements:

(1) the defendants initiated a criminal proceeding;
(2) the criminal proceeding ended in the plaintiff's favor;
(3) the proceeding was initiated without probable cause;
(4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and
(5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)). Moving Defendants primarily challenge the third and fourth elements. (*See* Defs.' Br. at 17–19, ECF No. 29-1.)

"To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012). A false arrest claim will not stand so long as there is probable cause for *any* crime for which the person was arrested. *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) (citing *Edwards v. City of Phila.*, 860 F.2d 568, 575–76 (3d Cir. 1988)).

Although some differences exist between § 1983 claims for malicious prosecution and false arrest, *see Jerri v. Harran*, 625 F. App'x 574, 582 (3d Cir. 2015) (noting that "[t]he primary difference . . . is that '[a] claim for false arrest, unlike a claim for malicious prosecution, covers damages only for the time of detention until the issuance of process or arraignment, and not more'" (quoting *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007))), both claims are defeated by a showing of probable cause, *see id.* (explaining that where "arrest and prosecution were for the

8

same alleged conduct . . . . probable cause to arrest [the plaintiff] would defeat his malicious prosecution claim as well"). Mindful that "probable cause is a complete defense" to both malicious prosecution and false arrest claims, *Herman v. City of Millville*, 66 F. App'x 363, 365 (3d Cir. 2003), the Court may collapse its analysis into one discussion, *see Pulice v. Enciso*, 39 F. App'x 692, 696 (3d Cir. 2002) ("Under §1983, false arrest, false imprisonment, and malicious prosecution claims require a showing that the arrest, physical restraint, or prosecution was initiated without probable cause.").

"Probable cause exists whenever reasonably trustworthy information or circumstances within an arresting officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed by the person being arrested." *United States v. Laville*, 480 F.3d 187, 194 (3d Cir. 2007) (citing *United States v. Myers*, 308 F.3d 251, 255 (2002); *Draper v. United States*, 358 U.S. 307, 313 (1959)). Courts may not view the facts with the advantage of hindsight, but rather courts must "look[] to 'the facts available to the officers at the moment of arrest.'" *Karns v. Shanahan*, 879 F.3d 504, 523 (3d Cir. 2018) (citing *Barna*, 42 F.3d at 819). "Although the probable cause inquiry is usually a question for the jury, courts 'may conclude in the appropriate case . . . that probable cause did exist as a matter of law if the evidence, viewed most favorably to [the p]laintiff, reasonably would not support a contrary factual finding.'" *Id.* (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)).

The critical inquiry here is whether Defendant Gregus initiated his investigation and charges without probable cause. For several reasons, the Second Amended Complaint fails to allege adequately that Defendant Gregus lacked probable cause. First, Plaintiff suggests that Defendant Gregus withheld the surveillance video from Judge Borow when he applied for a Complaint-Warrant. However, Plaintiff also states that Defendant Gregus did not receive the

9

surveillance video until May 14, 2014, four days after he applied for the Complaint-Warrant. (*See* 2d Am. Compl. ¶¶ 68–71.) These allegations contradict one another. But more importantly, the Second Amended Complaint does not allege that Defendant Gregus mentioned the surveillance video to Judge Borow or somehow misled Judge Borow about its existence or contents. (*See id.* ¶ 59 (alleging that "Defendant Gregus did not inform Judge Borow of the existence of the surveillance video").) Rather, Plaintiff's objection is that Judge Borow did not have an opportunity to review the video while he was making an initial probable cause determination. (*See id.* ¶ 62 ("In weighing the existence of probable cause, Judge Borow was not provided, nor did he use the surveillance video footage.").)

Second, Plaintiff essentially contends that the surveillance video somehow exonerates Plaintiff and that a review of the video would have clued in Defendant Gregus and Judge Borow that the evidence against Plaintiff did not amount to probable cause to arrest him. Plaintiff accuses Defendant Gregus of "anointing" Defendant Stimmel's fabricating version of events by ignoring the purportedly exculpatory surveillance video. But the surveillance video neither corroborates nor refutes Defendant Stimmel's Victim Statement because the pertinent facts are simply outside the frame of the shot.[3] In fact, the blurry, choppy surveillance video is more telling about what it does not depict than what it does. (*See* Surveillance Video at 01:21:16–21;

---

[3] The Court may consider materials that are "*integral to or explicitly relied* upon in the complaint." *In re Asbestos Prods. Liab. Litig.*, 822 F.3d 125, 133 & n.7 (3d Cir. 2016) (emphasis in original) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)); *see also Park v. Temple Univ.*, 757 F. App'x 102, 104 n.1 (3d Cir. 2018) (finding appropriate for purposes of Rule 12(b) motion "hearing transcripts attached to the amended complaint and motion to dismiss, and the [university] Honor Code referenced in the amended complaint and attached to the motion to dismiss"). Because Plaintiff mentions the video throughout the Second Amended Complaint (*e.g.*, 2d Am. Compl. ¶¶ 23, 41, 45, 48, 59–60, 62, 66–71, 73–76, 79–83, 113, 115–16, 122–23, 203), the Court finds it appropriate to consider it.

*see also supra* note 1 and accompanying text (describing quality of video).) The video does not show the initial interaction between Plaintiff and Defendant Stimmel before Plaintiff was thrown out of the bar, nor does it show Defendant Stimmel's injuries sustained during their physical grappling. And only fleetingly does it show Defendant Stimmel's initial attempt to physically remove Plaintiff. The video's existence does not negate probable cause.

Plaintiff alleges that "Defendant Gregus[,] prior to arresting Plaintiff[], obtained a warrant authorizing arrest by making false statements and/or omission[s] that created a falsehood" by "fail[ing] to inform Judge Borow of the existence of the surveillance video footage at the time the telephonic warrant was sought." (2d Am. Compl. ¶¶ 202–03.) To prevail on this allegation of false statement or omission, Plaintiff must prove (1) that Defendant Gregus "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant"; and (2) that "such statements or omissions are material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir.2000) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)). At the time Defendant Gregus applied for the Complaint-Warrant, he neither possessed nor had reviewed the surveillance video. He had no reason to distrust or doubt Defendant Stimmel's Victim Statement. Plaintiff even admits, albeit in a prior version of the complaint, that, not inconsistent with the Victim Statement, "[Defendant] Stimmel was struck by glassware in the possession of [Plaintiff] prior to being assaulted by [Defendant] Stimmel." (Am. Compl. ¶ 29.) And even if Defendant Gregus had reviewed the video, it did not sufficiently refute the Victim Statement. In all, Plaintiff does not adequately allege that Defendant Gregus ignored evidence, suppressed exonerating material, or made misrepresentations to Judge Borow in order to obtain the Complaint-Warrant.

Plaintiff's subsequent acquittal does not negate or void the probable cause determination that had been made nearly three years prior to the jury trial. In fact, the Supreme Court has explained that "[t]he validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979); *see also Ayala v. KC Envtl. Health*, 426 F. Supp. 2d 1070, 1088 (E.D. Cal. 2006) ("Proof that no crime was committed or that the accused is innocent does not negative [*sic*] the existence of probable cause." (quoting *Centers v. Dollar Mkts.*, 222 P.2d 136, 141 (Cal. Ct. App. 1950))); *Montalvo v. Jennings*, 1996 U.S. Dist. LEXIS 3941, at *6 (S.D.N.Y. Mar. 25, 1996) ("An arrest supported by probable cause does not subsequently become invalid merely because the suspect is innocent or ultimately acquitted."); *Neely v. City Hall*, 1985 U.S. Dist. LEXIS 18945, at *2 (E.D. Pa. June 13, 1985) (concluding that "subsequent events, such as the fact plaintiff was found not guilty, do not negate [an] initial probable cause [determination]" and holding that "plaintiff fails to state facts which support his claim of false arrest"). Furthermore, a grand jury, which was shown a surveillance video covering multiple areas of the Golden Rail that night, indicted Plaintiff on the same charges for which he was arrested (2d Am. Compl. ¶¶ 122, 127, 136), "which 'constitutes *prima facie* evidence of probable cause to prosecute,'" *Goodwin v. Conway*, 836 F.3d 321, 329 (3d Cir. 2016) (quoting *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989)).

For the reasons stated herein, the Second Amended Complaint fails to allege sufficiently that Defendant Gregus lacked probable cause to initiate criminal proceedings against Plaintiff. Accordingly, Moving Defendants' Motion is granted in this regard.

## II.     Common Law Malicious Prosecution Against Defendant Gregus (Count IX)

In a common-law tort action for malicious prosecution, the plaintiff must prove "(1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." *Brunson v. Affinity Fed. Credit Union*, 972 A.2d 1112, 1119 (N.J. 2009) (quoting *Helmy v. City of Jersey City*, 836 A.2d 802, 806 (N.J. 2003)). Because a finding of "probable cause is an absolute defense to a [p]laintiff's false arrest, false imprisonment, and malicious prosecution claims," *Wildoner v. Borough of Ramsey*, 744 A.2d 1146, 1154 (N.J. 2000), and because that the Second Amended Complaint fails to allege sufficiently that Defendant Gregus lacked probable cause to initiate criminal proceedings against Plaintiff, *see supra* Section I, this claim also fails.

## III.     *Monell* Liability Against City Defendant (Count XII)

To hold a municipality liable under § 1983, a plaintiff must show that either (1) the constitutional violations of government employees were the result of a policy or custom of the municipality for whom the employee works, *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)); or alternatively (2) the municipality failed to adequately train or supervise the employees that ultimately violated the constitution, *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278–79 (3d Cir. 2004). "It is well-established that there is no general municipal *respondeat superior* liability under 42 U.S.C. § 1983." *Ali*, 2011 U.S. Dist. LEXIS 109618, at *26 (citing *McMillian v. Monroe Cnty.*, 520 U.S. 781, 784 (1997); *Monell*, 436 U.S. at 691).

Where a claim is based on a failure to train or to supervise, a plaintiff must demonstrate both "deliberate indifference to the rights of persons with whom those employees will come into

contact," *Thomas*, 749 F.3d at 222 (quoting *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)) (internal quotations omitted); as well as a "causal nexus" between the failure to train and the constitutional injury, *id.* at 222, 226–27 (citing *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)). A finding of deliberate indifference requires that the constitutional violation be a "highly predictable consequence" of the failure to train, which arises where a pattern of similar violations has occurred in the past or where the need for training is "obvious." *Id.* at 223, 225 (citing *Connick v. Thompson*, 563 U.S. 51, 62, 64 (2011); *Canton*, 489 U.S. at 390 n.10).

Here, Plaintiff summarily alleges that Defendant Gregus, among others, deprived Plaintiff of his constitutional rights and that the acts (1) "were committed pursuant to a policy, statement, ordinance, . . . regulation, and/or decision officially adopted by [City Defendant]"; and (2) "were committed as a result of inadequate training and/or supervision." (2d Am. Compl. ¶¶ 215–16.) Regardless of whether Plaintiff adequately alleged a constitutional violation, Plaintiff fails to identify any specific—or, for that matter, general—policy, statement, ordinance, regulation, or decision by City Defendant. Plaintiff simply states the elements of the § 1983 cause of action; without more, Plaintiff fails to state a claim. "'[S]imply paraphras[ing] § 1983' does not meet Rule 8's pleading requirements because it fails to satisfy the 'rigorous standards of culpability and causation' required to state a claim for municipal liability." *Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010); *McTernan v. City of York*, 564 F.3d 636, 658–59 (3d Cir. 2009)); *see also Turner v. Donnelly*, 156 F. App'x 481, 483 (3d Cir. 2005) (affirming dismissal pursuant to Rule 12(b)(6) where plaintiff failed to identify any policy or custom of the local government that caused plaintiff's injury); *Joseph v. Allegheny Cnty. Airport Auth.*, 152 F. App'x 121, 124 (3d Cir. 2005) (same). Accordingly, claims against City Defendant are dismissed.

## **CONCLUSION**

For the foregoing reasons, Moving Defendants' Motion for Judgment on the Pleadings is granted.  An appropriate Order will follow.

Date:  07/30/2019                                              */s/ Anne E. Thompson*
                                                                              ANNE E. THOMPSON, U.S.D.J.